## INGHAM v. DUDLEY, ADM'R.

1. **Practice**: CLAIM IN PROBATE COURT: RIGHT TO JURY.  In an action in the Circuit Court, sitting as a court of probate, to establish a claim against an estate, either party is entitled to a trial by jury.

2. **Promissory Note for Endowment of College**: NEGOTIABILITY OF: DEFENSES TO.  In an action on a note in the following form: "Ten years after date, for value received, I promise to pay to the treasurer of Wilton Collegiate Institute the sum of $1,000, as endowment, with annual interest at ten per cent, to secure two perpetual scholarships, No——, in said Collegiate Institute: Said scholarships to be available on the payment of the interest annually," *held*:
    1st.   That the note was not negotiable, and that it could not be sold at sheriff's sale, to pay the debts of the institute, so as to pass to the purchaser the right to recover thereon, regardless of the equities existing between the maker and payee.

2d. That an answer containing in substance the following allegations: (1) That this note was given in consideration of two perpetual scholarships, to raise an endowment which was to constitute a trust fund, which fund could not be appropriated to the payment of the debts of the institution. (2) That the institution had become defunct, and that thereby the maker of the note was deprived of his scholarship, as well as defeated in his purpose to aid in endowing the institution. (3) That the note was not to be valid unless $40,000 endowment should be raised, and that only $2,000 were raised—tendered a good defense, which was erroneously held bad in demurrer.

3. **Practice:** PLEADING: AMENDING ANSWER HELD BAD ON DEMURRER: EFFECT OF. When an answer is held bad on demurrer, the defendant does not waive his exceptions to the rulings on the demurrer by amending his answer, so as to set up new defenses. Such waiver follows only where the amendment is designed to supply an omission, or cure a defect, pointed out by the demurrer.

4. **Statute of limitations:** CLAIM IN PROBATE: EQUITABLE RELIEF. Where a note was filed as a claim of the fourth class, within twelve months after giving the notice required by section 2421 of the Code, but the cause was continued by the consent of the parties, so that the claim was not *proved* within the twelve months, *held* that the circumstances entitled the claimant to equitable relief,'' and that the claim was not barred.

*Appeal from Wapello Circuit Court.*

TUESDAY, DECEMBER 5.

THIS is a proceeding in the Circuit Court, sitting as a court of probate, upon a claim filed by plaintiff against the estate of which defendant is administrator. The full amount of the claim was allowed by the final order of the court, from which defendant appeals. The facts of the case appear in the opinion.

*H. B. Hendershot* and *W. McNett*, for appellant.

*W. D. Tisdale* and *W. H. C. Jaques*, for appelee.

BECK, J.—I. Plaintiff's claim is based upon a promissory note which, with the indorsements thereon, is in the following language:

VOL. LX—2

"$1,000. .　　　　　　WILTON COLLEGIATE INSTITUTE.

50ct. R. S.　　　　　　WILTON, Iowa, October 2, 1871

"Ten years after date, for value received, I promise to pay to the Treasurer of Wilton Collegiate Institute, the sum of one thousand dollars, as endowment, with annual interest at ten per cent, to secure two perpetual scholarships, No.——— in said Collegiate Institute, said scholarships to be available on the payment of the interest annually. As witness my hand this October 2, 1871.　　　　CHARLES DUDLEY."

Indorsed as follows:

"Oct. 15, 1872. Received on the within note one hundred dollars.　　　　　A. S. MCPHERREN, Treasurer."

Oct. 2, 1873. Paid interest due to date, $100.

Oct. 2, 1874. Paid interest due to date, $100.

Nov. 12, 1874. Received on interest, $50.

Jan. 6, 1876. Received on interest, $50.

Pleadings filed by the plaintiff subsequent to the claim show that he acquired title to the note under a sheriff's sale on an execution issued upon a judgment rendered against the payee of the note in favor of a teacher, for arrears of salary due him. The proof tends to support this allegation of plaintiffs pleadings.

The defendant answered setting up defenses to the claim, and filed certain amended answers. Demurrers to parts of these rulings were sustained. It becomes necessary to set out the portion of the answers held bad on demurrer.

For a clearer understanding of the defenses assailed by the demurrer, it should be here stated that the original answer alleges that the note above set out was executed by defendant's intestate as a part of a fund intended to permanently endow the professorships in the Wilton Collegiate Institute, a Baptist College located at Wilton, and that in consideration of the note the intestate acquired the right to two perpetual scholarships in the Institution. The answer admits that intestate paid no interest on the note after January, 1876.

The sixth count of the original answer, and the first and second amended answers, are as follows:

### SIXTH COUNT OF ANSWER.

"That the Davenport Congregational Association has finally succeeded to the real property of said "Wilton Collegiate Institute," which latter has become wholly defunct and insolvent, and forever unable to respond to the provision in said note with respect to scholarships, and has not made, and never can make, any arrangement with any Intstitution, Baptist or otherwise, whereby said scholarships ever can or ever will be honored or recognized."

### FIRST AMENDED ANSWER.

"2. As to matter of consideration and its failure, in addition to what is said in his answer, he avers that the sole and only consideration for said note was the perpetual maintainance, by the payee thereof, of a Baptist Collegiate Institute at Wilton, Iowa, and the furnishing to the maker thereof, his heirs or assigns, of two perpetual scholarships therein, and that such consideration has wholly failed by the perpetual failure, dissolution, bankruptcy and death of any such institution and scholarships, and as more fully set out in the original answer."

### SECOND AMENDED ANSWER.

"That the note sued upon, as appears upon its face, was a non-negotiable endowment note, given for the purpose of raising a permanent trust fund, the interest on which fund could alone be available to pay current expenses of conducting the regular college work of the "Wilton Collegiate Institute," and that the said note or interest could not be legally used, seized nor sold to pay debts of said Institute, and that any attempt thus to dispose of said note would be and was in violation of the said trust, and was null and void.

"2. Defendant further says that, prior to the time said endowment note and others of like character were taken, the

said Wilton Collegiate Institute, and its board of managers, resolved and agreed to raise $40,000 of such endowment notes, and the note in suit and others were given while this action was in force, and with the understanding and agreement that they should not become permanent funds or assets of the Institute, nor be incorporated permanently into the trust or endowment fund, until, nor unless, the endowment funds reached the said sum of $40,000, and if they did not reach such sum, then those given were to be returned to the makers. That the endowment notes, in fact, never reached the sum of $40,000, nor exceeded the sum of about $2,000, wherefore the note in suit never became permanently the property of the Institute, and should have been returned, and cannot now be enforced.

"3. That the principal consideration upon which the note in suit rested and was given, was that the maker should thereafter own and control two perpetual scholarships in said Institute, and that this consideration has wholly and perpetually failed by the hopeless insolvency and disorganization of said Institute, and by its permanent disability to make good said consideration, wherefore defendant asks judgment for costs.

"4. Defendant says that the claim of plaintiff is also barred by the statute of limitations, because not filed and proved up within the year after administrator's notice, as required by law."

A demurrer to the portions of the answers above set out was sustained. The abstract recites the rulings of the court in the following language:

"Demurrers sustained: 1st. The court holds that defendant's failure to get his scholarships is no defense, when he admits that he failed to pay his interest. 2d. That the sale of the note to pay the debts of the institution does not constitute a defense. 3d. That the agreement by the college to raise $40,000 formed no part of the note, and their failure to do so, no defense to the note."

After this decision of the court, the defendant filed other

amendments to his answer, which, in view of a question aris-ing in the case, it becomes necessary to set out. They are as follows:

"1st. Comes now the defendant, and for further amend-ment to his original answer and the amendments thereto, al-leges that the note in suit sold at said execution sale for about $100, and that the plaintiff knew that it only sold for said sum, being present at the sale as the attorney for the plaintiff in execution, and that the plaintiff, at the time of getting possession of the note, did not pay to exceed the sum of $100, but defendant is unable to state just the sum paid, if anything. And now defendant says that in no event can plaintiff re-cover more than said note sold for on execution sale and no more than he paid for the same, with interest thereon.

"2d. He further avers that both the principal and interest on the note in suit constituted a trust fund for a permanent endowment of the said institute, and any attempt to sell, or sale, either of principal or interest, on execution, for debts, was an illegal disposition, and a diversion of both, and no title to either did or could be passed thereby."

### FOURTH AMENDMENT TO ANSWER.

"Comes now the defendant, and, for further amendment, avers that at the time of the sale of the note in question, on execution, and the procurement of it by plaintiff, and down to his death, the maker thereof resided at Agency, Iowa, and was entirely solvent and notoriously so.

"Defendant further says that at no time did plaintiff tender or offer to furnish said maker of said note his scholarships, but, on the other hand, collected, in 1878 or 1879, regular tuition from his daughter, Mary, who attended school at the only school held by said institute, which then farmed out the institute or school to a private party."

A demurrer to both of these amendments was sustained. Upon the cause coming on for trial, the defendant demanded a jury for the trial of the issues presented by the pleadings, which was refused and the trial was had to the court. This

action of the court and the decision upon the demurrers present the only questions which we shall consider, as they are decisive of the case.

II.   We shall first consider the ruling of the Circuit Court in refusing defendant's demand for a trial by jury.   Plaintiff relies upon Code, section 2411 to support this ruling.   It provides that, if a claim filed against the estate is not admitted by the executor, "the court may hear and allow the same, or may submit it to a jury; and on such hearing, unless otherwise provided, all provisions of law applicable to an ordinary proceeding shall apply."   Under this provision the proceeding to establish a claim against an estate is to be regarded as an action at law, *i. e.*, an ordinary proceeding, unless an equitable defense be pleaded.   Code § 2507.   In actions of this character the trial is by jury, unless the jury be waived by the parties.   Code § 2740. The language of Code, section 2411, above quoted, must be construed to harmonize with these provisions so that all, both that section and these, may stand.   Such result follows from holding that section 2411 authorizes the court to try a case of this kind with or without a jury in accord with other provisions; that is, when the parties waive a jury the cause may be tried to the court.   This construction of the section does no violence to its language and is in harmony with other statutes and the general spirit of our laws.

*1. PRACTICE: claim in probate court: right to jury.*

III.   We shall next consider the rulings of the court upon the demurrers to the several answers of defendant.   These answers set up a defense, which, briefly stated, is, as follows:

1.   The note by its terms was executed to endow Wilton Collegiate Institute, and to secure to the intestate two perpetual scholarships therein, and to constitute a trust fund which could be appropriated to no other purpose, and was not liable to be taken in satisfaction of debts against the institution.

*2. PROMISSORY note for endowment of college: negotiability of: defense to.*

2.   The institution has become defunct, and the purpose of the donor, the intestate, to endow it, cannot be carried out, and

he is deprived of the scholarships to which he is entitled by the terms of the note.

3. The endowment fund to be raised was $40,000, and the note was not to be valid until the whole was raised.

4. The fund raised did not exceed $2,000.

We are of the opinion that the answers presented a sufficient defense to the action. The note upon its face discloses that it is given as an endowment of the institution. The term describes a fund, the income from which is used for the support of the institution; the fund itself is not to be used. This is the accepted meaning of the word, when used in connection with institutions of learning. The answer declares that it was given and accepted under an agreement to that effect between the intestate and the payee of the note.

It was competent for the parties to make such a contract, under which the note could be used in no other way than as therein prescribed. The note is not negotiable, and defendant may urge the same defense in the action which he could plead were it prosecuted by the payee. This position is admitted by plaintiff's counsel.

The note, as alleged in the answer, was held as a trust fund by the institute, and cannot be appropriated to purposes not contemplated by the trust. Therefore, the note, as shown by the answer, being a part of the endowment, a trust fund, cannot be made subject to the general debts of the institution. In other words, trust funds cannot be appropriated by the trustees to purposes other than those prescribed by the trust, nor will the law violate the trust and divert them by judicial proceedings and sales from the purposes of the trust. These are elementary doctrines and do not demand the support of authorities. Under them the answer presented a good defense to the action. Our conclusions are not inconsistent with *Oskaloosa College v. Hull*, 25 Iowa, 155, and *Simpson Centenary College v. Bryan*, 50 Iowa, 293, cited by plaintiff's counsel.

IV. The allegation in the answer to the effect that the note under the agreement of the parties should not be valid

until an endowment of $40,000 should be raised, presented a good defense. Surely it cannot be seriously urged that under such an agreement the note could be enforced though no more than $2,000 was raised to endow the institute. The contract alleged, if established, must be enforced, and the defendant should be permitted to prove it if he can, and should not be silenced by a demurrer.

V. The answers show that the intestate was entitled to receive two scholarships in consideration of the note, and that, as the institute has become defunct, the performance of that condition has become impossible.

The court below held, that as the intestate failed to pay the interest on said note, he cannot set up a claim to the scholarships. This conclusion is erroneous. It will be observed that the note provides that intestate was to have the scholarships, but they were available only upon payment of the interest annually. This is a plain contract and may be expressed in few words. The intestate is to have the scholarships upon payment of the note, and is to have the benefit of them before the note is paid, upon the payment of the interest annually. The point demands no further attention.

VI. Counsel for plaintiff insists that, by filing the third and fourth amendments to his answer, the defendant waived 3. PRACTICE: pleading: amending answer held bad on demurrer: effect of. objections to the rulings sustaining the demurrer to the answer before filed. Counsel in support of their position rely upon the general rule that a party whose pleading is held bad upon demurrer waives the error of such a ruling by pleading over after the judgment upon the demurrer. A little reflection will make it plain that the rule is not applicable to the case under consideration. It reaches a case where a party, by pleading over, supplies omissions or cures defects in his pleading pointed out by the demurrer. We need not consume time to show the operation of the rule when the demurrer to the petition is sustained. We shall consider it in connection with a demurrer to the answer, the case now before us.

Ingham v. Dudley, Adm'r.

The third amendment. to the answer alleges that the note was sold at sheriff's sale for $1.00, and claims that recovery cannot be had in this case for more than that sum. The second count of this amendment alleges that the note is a part of the trust fund, and is a substantial repetition of a defense set up in the answer before pleaded. The fourth amendment alleges the residence of the intestate at Agency City, his solvency, and that the scholarships to which he was entitled were never tendered to him, and that he has paid tuition for his daughter, who attended the school of the institute. It will be observed that the first count of the third amendment and all of the fourth amendment present new, distinct, and independent defenses to the action and are, in no way, connected with former defenses, and are not to be regarded as allegations of matter intended to supply defects in the statement thereof or to complete the statement of the defenses.

The parts of the pleading now under consideration are not strictly amendments to former answers, but, as we have just said, they present new defenses.

A defendant may plead as many defenses as he may have. Code, § 2655, ¶ 6. He may add to his answer by way of an amendment new defenses at such times and in such manner as may be permitted by the court. If a defense pleaded be held insufficient upon demurrer, the defendant may, with leave of the court, set up another, and by doing so he will not be regarded as waiving the error in the ruling sustaining the demurrer. One position may be made plain by an illustration of a supposed case. Upon an action on a contract defendant pleads certain facts, claiming thereon that the contract is within the statute of frauds. A demurrer to the answer is sustained and upon leave granted by the court to amend his answer he pleads the statute. of limitations. This amendment does not waive the error of the decision sustaining the demurrer. If the two defenses had been pleaded in the original answer, the last would not have been a waiver of objection to

the ruling sustaining a demurrer to the second. This cannot be doubted. As defenses may be pleaded by separate answers and at successive periods during the progress of the proceedings, the rule just stated is applicable to cases in which answers are filed in that manner.

The rule relied upon by plaintiff prevails only in cases where parties by amendments or by new pleadings cause their answers, held bad upon demurrer, to conform to the ruling of the court. We have found no decision of this court inconsistent with this conclusion.

VII. The second count of the third amendment repeats a defense before held bad. It could have been assailed by a motion to strike, but plaintiff regarded it as a pleading entitled to stand in the files. If it waived the error in the ruling upon the prior demurrer, that error was repeated in the ruling upon the count of the answer, and is not waived by the fourth amendment for the reasons just stated.

VIII. Counsel for defendant insist that the evidence shows that the action is barred by the statute of limitations, for the reason that the claim was not filed and proved within twelve months after the notice of administration upon the estate. The facts are these: the note was filed as a claim within the twelve months, and a term of court intervened within that time. The defendant was not ready for trial at that term, and the cause was by the consent of the parties continued, so that it was not proved within twelve months. Surely this is a circumstance which will entitle the plaintiff to equitable relief against the bar of the statute. Code, § 2421. It would be most inequitable to defeat plaintiff's action on the ground of delay, assented to by defendant, which was absolutely necessary to enable him to present his defense. We think the "peculiar circumstances" entitle plaintiff to "equitable relief" against the enforcement of the bar of the statute.

4. STATUTE of limitations: claim in probate: equitable relief.

Other questions discussed by the counsel need not be con-

sidered, as our conclusions above expressed are decisive of the case.

For the errors we have pointed out, the judgment of the Circuit Court will be

REVERSED.